In this suit, plaintiffs, Will and Joe Helton, seek to recover of the defendant the sum of $425, as damages for the killing of three fox hounds, and the wounding of another, belonging to plaintiffs, by the defendant, on Friday night, May 5, 1944, at about the hour of 10:00 or 11:00 o'clock, P.M. Plaintiffs allege that the said hounds were raised and trained by them at much expense and trouble to be and were valuable hounds, and were kept for use in the hunting of fox, and were at all times under their care and control, and had been domesticated accordingly. They further allege that on the day and date and the hour stated supra, and while the said hounds were actually chasing a fox, and were under their control at all times, defendant, as an uninvited guest and not on the said hunt, "wilfully, forcefully, unlawfully, wantonly and without any cause whatsoever, did then and there shoot the dogs of petitioners," killing three of them, and wounding another to such an extent as to make him worthless to them.
Defendant filed an exception of no right or cause of action based off the ground that dogs were not personal property unless the owners were assessed therefor, and since there were no allegations in plaintiffs' petition to this effect, the petition disclosed no right or cause of action on behalf of plaintiffs. The exception was overruled by the trial court, citing as authority the case of State v. Chambers,194 La. 1042, 195 So. 532.
In answer, the defendant makes a general denial of all the material allegations of *Page 362 
plaintiffs' petition. In further answer, he alleges that, prior to the alleged killing of the dogs, he was in charge of his brother's sheep; that he had had a great deal of trouble with sheep killing dogs, which had killed 30 sheep out of 32, and another sheep two nights prior thereto; that on the night of the alleged killing of the dogs, he was aroused from sleep by dogs barking among his cattle and sheep and went to investigate; that he overtook the pack of dogs and killed three of them and wounded another; that since the alleged killing and wounding of the dogs there has not been any killing of sheep, by dogs nor molesting of cattle on his place. He specifically denies that the said dogs allegedly killed were under the control of plaintiffs at the time of their being shot. Defendant, in the alternative, alleges that plaintiffs were engaged, at the time of the alleged killing, in violating the law; that is, the hunting of fox out of season. He pleads further that he acted in good faith and upon probable cause, and in accordance with law in the killing of sheep killing dogs.
Upon these issues, the trial resulted in a judgment in favor of plaintiffs and against defendant in the sum of $260.00. Defendant has appealed.
Under the provisions of Act No. 107 of 1882, a dog, in order to become the personal property of the owner and to be placed on the same guarantees of the law as other personal property must be given to the assessor and placed on the assessment rolls, otherwise it is not entitled to the protection of the law. If so assessed, in a civil action for the killing of or injury to it, the owner can only recover the value as fixed by him in the last assessment preceding the killing or injuries complained of. In the case at bar, it is conceded that the dogs, killed and injured were not assessed. It is contended, however, that this act has been repealed or superseded by the provisions of Article 10, Section 4, of the Constitution of 1921, as amended, exempting cattle, livestock, animals and poultry from taxation as decided in the case of State v. Chambers, supra. However, without agreeing or disagreeing, and admitting for the mere sake of argument the correctness of this decision, we have yet other statutes affecting the status of a dog in a civil action.
Section 1 of Act No. 239 of 1918, declares it unlawful for any person or persons to suffer any dog or dogs in his possession, or kept about him, about his premises, to run at large on any uninclosed land, or trespass upon any inclosed or uninclosed lands of another.
Section 2 of the said act provides that dogs shall have "aluminum or brass license tax tags" to be purchased by the owners thereof from the sheriffs of each parish, said tags to be furnished to the sheriffs by the Secretary of State.
Section 3, after providing for the seizure of any dog found unaccompanied by its owner or keeper trespassing on any premises other than the premises of the owner, and the empounding thereof, says: "Provided, that any citizen or officer may kill any dangerous or vicious dog, or dogs not registered as herein provided for," etc. The concluding sentence of the said section reads: "No citizen or officer shall be liable to damages or to prosecution by reason of killing any dog as herein provided." It is very evident that the quoted portion of the section has reference to and means a dog not tagged as required by Section 2, and prohibited by Section 1 of the statute.
It is not alleged nor contended that the dogs, subject of this controversy, were tagged in compliance with this statute.
[1] We had under consideration the interpretation of that statute under almost similar facts, in the case of Jeane v. Johnson at al., 154 So. 757, 758, and we therein stated: "Section 1 of Act No. 239, 1918, p. 429, to which we have referred, in declaring that dogs should not ran at large, evidently has reference to dogs assessed; otherwise it would not have provided for any liability in damages where killed by a citizen or officer, as no damages could be claimed for a dog not assessed, as such is not property. A dog roaming at large must, however, be tagged, as required under section 3 of that statute, to entitle the owner to recover for its value, if killed."
We find no liability on the part of defendant, unless the plaintiffs can recover under Section 5 of Act No. 239 of 1918. This section reads as follows: "Nothing in this act shall be construed to prevent any citizen of this State fromlawfully hunting with a dog or dogs, provided said dog or dogs be accompanied by the owner or keeper." (Italics ours.)
The facts show that for some time prior to the killing of the dogs, defendant's cattle, horses and sheep had been molested by *Page 363 
dogs. In fact, on the Tuesday night or early Wednesday morning preceding the killing, the premises of defendant were visited by a dog and a sheep was killed. On the Wednesday night, again the premises, were visited by a dog; the dog got away from defendant. Plaintiffs, in company with John and Ernest Moore, had hunted, fox on the Tuesday and Wednesday nights in defendant's neighborhood. On the night of the killing, the hunters left their home, some miles away from the scene of the killing, in a truck, with eight fox hounds. They drove to a cattle gap leading into the Gaylord pasture, some 2.8 miles from defendant's home, and some 2 miles from the place of the killing. The evidence is not clear as to whether the eight hounds were unloaded at one time or the hounds divided into two packs of four hounds each. It is certain, however, that four of the hounds, between the hours of 10:30 and 11:00 P. M., visited defendant's premises causing the cows to bellow, the calves to bleat and the horses to run. At that time plaintiffs, together with John Helton and Ernest Moore, remained at the cattle guard, at or around the truck. The commotion around defendant's premises was such as to awaken defendant's wife and daughter. The wife awakened defendant. Defendant dressed, secured his gun, went out and found that the dogs had departed; and from their barking, defendant discerned the direction in which they were going. He got in his car, and gave chase. He came upon the dogs about three quarters of a mile from his home, got out of his car and shot two of the hounds which were going in the direction of his home and the two others while going in the direction away from his home, killing three outright and wounding one. One of the plaintiffs, after hearing the shooting, blew a horn to call the hounds. Two of the hounds composing the other pack answered the call, while two failed to report back. The evidence does not show what the wounded dog did. Joe and John Helton then got in the truck and drove to defendant's house. Defendant admitted the shooting of the dogs and gave as his reason the molesting of his cattle, horses and sheep. Defendant was, at the time of the shooting, in charge of his brother's and nephew's sheep. They originally had thirty-two and by the activities of dogs, the number was reduced to two.
[2, 3] At the time of the killing of the dogs, and the admitted hunting of fox by plaintiffs, Act No. 39 of 1928, was in force. Section 1 of said act reads as follows: "That it shall be unlawful for any person to engage in the sport of fox hunting or to run either red or gray foxes with hounds from the last day of February until July 1st of each year." Thus, it can readily be seen that the plaintiffs were violating the provisions of this Statute and it cannot be said that plaintiffs were "lawfully hunting with a dog or dogs" to exempt them of the provisions of Act No. 239 of 1918. Furthermore, since the dogs were a distance of two miles or more from the plaintiffs, in our opinion it cannot be said that the dogs were accompanied by their owners or keepers. To so hold, an owner of a dog could remain at home and send his pack of dogs out hunting and contend that his dogs were within his beck and call, as long as the dogs remain within hearing distance of a horn. The facts in this case show that two of the other pack of hounds failed to answer the blowing of the horn and the evidence fails to show that the wounded dog heard or responded to the horn of plaintiffs.
[4] Furthermore, Section 3 of Act No. 157 of 1934 provides that "Any person, on finding any dog, not on the premises of its owner, harborer or possessor, and harassing, wounding, or killing sheep, may, at the time of the finding said dog, kill the same, and the owner thereof shall not be able to sustain any action for damages against the person so killing such dog." The evidence convinces us that these dogs were the ones harassing the sheep in charge of defendant on the night of the killing of them and that one of them, if not all of them, had previously killed some of the sheep on previous nights. Since the shooting and killing, defendant's cattle, horses and sheep have not been harassed. Defendant, under these circumstances was fully justified in killing the dogs, and under said section he is free from any damages for his act.
We are firm in the opinion that the judgment appealed from is erroneous and, for the reasons herein assigned, it is accordingly ordered that the same be and is hereby annulled, reversed and set aside. Plaintiffs' suit is dismissed at their costs. *Page 364